UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SANTEL COMMUNICATIONS COOPERATIVE, INC., | ) ) ) | CIV. 08-4038-KES |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

Plaintiff, Santel Communications Cooperative, Inc., filed and served a complaint on defendant, United States of America, seeking to recover $1,126,675 or such amount as is legally recoverable, plus applicable interest, on the basis that the United States improperly collected and retained it. (Docket 1). United States moves to dismiss Santel's claim on the ground of lack of subject matter jurisdiction. (Docket 24). United States's motion to dismiss is granted.

**BACKGROUND**

Santel is a rural-telephone cooperative headquartered in Woonsocket, South Dakota. Santel was founded in 1951 and has operated continuously as a rural-telephone cooperative since that time. In general, nonexempt cooperatives have been governed since the Revenue Act of 1962 by subchapter T of the Internal Revenue Code, see generally [Farmers Coop. Co. v. Birmingham, 86 F. Supp. 201 (N.D. Iowa 1949)](), but Santel is a rural-telephone cooperative and is therefore specifically excluded from the statute.

See 26 U.S.C. § 1381(a)(2)(C) (explicitly excluding from subchapter T any organization "which is engaged in furnishing electric energy or providing telephone service to persons in rural areas").  As explained in the committee reports to the Revenue Act of 1962, the nonexempt cooperatives engaged in providing telephone services to rural areas "will continue to be treated the same as under present law."  H.R. Rep. No. 87-1447 (1962); S. Rep. No. 87-1881 (1962); see also Clayton S. Reynolds, *Patronage-Sourced Income: An Expanding Universe,* 58 Tax Law. 479, 481 n.11 (Winter 2005).  Therefore, the law prior to 1962 continues to govern the taxation of Santel.

Santel provides telephone services to approximately 2,500 members; by agreeing to purchase services from Santel, a person automatically becomes a member of the cooperative and is thereafter entitled to one vote. Santel's bylaws also provide that a member is entitled to a share of the cooperative's "patronage-sourced income," which is income that Santel earns from conducting business with its patrons, in proportion to the purchases of the cooperative's services made by the member.  Santel's bylaws mandate that all patronage-sourced income be allocated to its patrons on a patronage basis.

In 1989, Santel purchased cellular FCC licenses and formed three corporations to hold the licences.  Santel made this purchase in order to meet the needs of its rural customers and to protect itself from emerging

competitors. Santel owned 16 percent, 20 percent, and 25 percent, respectively, of the three corporations.

In 1998, Santel sold its interest, or stock, in the three corporations, leading to a taxable capital gain of $5,256,536. Santel realized the capital gain in 1998. At that time, the IRS maintained the position that capital gains were not patronage-sourced income. See sec. 1.1382-3(c)(2), Income Tax Regs. Santel did not distribute or allocate the proceeds that arose from this capital gain as a patronage dividend in 1998.

Santel paid the estimated tax on its 1998 taxable income on March 15, 1999, and filed its 1998 corporate income tax return on May 25, 1999. The 1998 corporate income tax return reported the $5,256,536 proceeds from the 1998 sale of stock as taxable capital-gain income.

In 1999, the United States Tax Court issued an opinion finding that, in appropriate circumstances, income from the sale or exchange of capital assets could be patronage-sourced income. Farmland Indus. v. Commissioner, 78 T.C.M. (CCH) 846 (1999). On March 27, 2001, the IRS issued a formal memorandum announcing the IRS's acquiescence in the tax court's finding in Farmland Industries. Id., *action on dec.* 2001-003 (Mar. 28, 2001). Specifically, the IRS stated that it will determine whether each item of income is patronage or nonpatronage sourced by considering the circumstances and analyzing "the relationship of the activity producing

the income or loss to the cooperative's business of serving its patrons." AOD 2001-003, at 2.

On September 14, 2001, in light of the IRS's change in position, Santel allocated $3.9 million of the proceeds from the 1998 sale of stock to its patrons' accounts. Santel excluded or deducted from its 2000 gross income the amount of the proceeds, and thereafter reported a net operating loss in the amount of $3,713,428 for the 2000 taxable year in an amended 2000 corporate income tax return.

On September 6, 2002, Santel filed a claim for refund with the IRS by filing an amended 1998 income tax return. The refund claim was in the amount of $1,126,975. Santel asserted that this refund was due to a carryback to 1998 of the 2000 net operating loss.

The IRS denied Santel's refund claim, and Santel now appeals to this court.

## DISCUSSION

United States argues that Santel did not have a valid net operating loss in 2000, and therefore, the time limitations for filing a refund that arises from a net operating loss do not apply. Because Santel has failed to timely file a claim for refund of its 1998 income taxes, United States contends that Santel is barred from bringing a suit for refund.

A.     **Failure to Timely File Claim for Refund**

To successfully maintain a refund suit in federal district court, a taxpayer must first abide by the requirements of section 7422(a) of the Internal Revenue Code and duly file with the Secretary a claim for refund or credit beforehand.  See 26 U.S.C. § 7422(a); Chernin v. United States, 149 F.3d 805, 813 (8th Cir. 1998).  In order to have a refund claim considered duly filed under section 7422(a), the filing must adhere to the time limitations set out in section 6511 of the Internal Revenue Code.  See Chernin, 149 F.3d at 813.

Section 7422(a) provides in pertinent part:

> **(a) No suit prior to filing claim for refund.**--No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

Section 6511 provides the following time limitations for filing a claim for a refund:

> **(a) Period of limitation on filing claim**.--Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was

5

> paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

26 U.S.C. § 6511(a).

The Code, therefore, mandates that a taxpayer file a refund claim with the Secretary within the latter of two years after paying the tax or three years after filing its tax return. 26 U.S.C. § 6511(a). Santel paid the tax on its 1998 income on March 15, 1999. Santel filed the corporate income tax return for 1998 on May 25, 1999. Under section 6511(a), the latest that Santel could file a refund claim of its 1998 taxes would be May 25, 2002, which is the latter of two years after paying the tax and three years after filing the tax return.

Santel, however, did not file a refund claim until September 6, 2002, when it filed an amended return for its 1998 tax year. As a prerequisite to maintaining a tax refund suit in a federal district court, the failure by a taxpayer to duly file a refund claim bars this court from exercising jurisdiction over the taxpayer's suit. Chernin, 149 F.3d at 813. In order to have a refund claim considered duly filed under section 7422(a), the filing must adhere to the time limitations set out in section 6511 of the Internal Revenue Code. See id. Santel failed to timely file its claim for refund of its 1998 income tax, and therefore, under section 7422(a) of the Internal Revenue Code, its claims against United States for a refund may not be

maintained in this court. See 26 U.S.C. § 7422(a); Chernin, 149 F.3d at 813.

**B.      Net Operating Loss**

Santel contends that the exclusion of a patronage dividend from its income was allowed in 2000, and therefore, it had a net operating loss for the 2000 tax year. As a result, Santel argues that it timely filed its refund claim because the limitation period for refund claims that result from the carryback of a net operating loss extended to October 15, 2002.

Although section 6511(a) mandates that a taxpayer file a refund claim with the Secretary within the latter of two years after paying the tax or three years after filing its tax return, a different statutory filing requirement applies to refund claims arising out of net operating loss carrybacks. The section of the Internal Revenue Code governing the timeliness of a taxpayer's claim for a refund of net operating loss is found in 26 U.S.C. § 6511(d)(2)(A).

Section 6511 provides the following time limitations for filing a claim for a refund arising out of a net operating loss:

> **(d) Special rules applicable to income taxes.--**
>
> **(2) Special period of limitation with respect to net operating loss or capital loss carrybacks.--**
>
> **(A) Period of limitation**.--If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall

be that period which ends 3 years after the time prescribed by
law for filing the return (including extensions thereof) for the
taxable year of the net operating loss or net capital loss which
results in such carryback, or the period prescribed in
subsection (c) in respect of such taxable year, whichever expires
later. In the case of such a claim, the amount of the credit or
refund may exceed the portion of the tax paid within the period
provided in subsection (b)(2) or (c), whichever is applicable, to
the extent of the amount of the overpayment attributable to
such carryback.

26 U.S.C. § 6511(d)(2)(A). Thus, when a taxpayer's claim for a refund relates to an overpayment that can be attributed to a net operating loss carryback, the period for filing for a refund is the period that ends three years after the time prescribed by law for filing the return for the taxable year of the net operating loss. 26 U.S.C § 6511(d)(2)(A).

### 1. No Right to Deduct Patronage-Sourced Dividends

A net operating loss results when statute-derived deductions exceed gross income. 26 U.S.C. § 63(a). The Supreme Court has established the rule that deductions are derived solely from a statute, and any taxpayer who seeks a deduction must first cross the hurdle of "point[ing] to an applicable statute and show[ing] that he comes within its terms." See New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Farmers Coop. Co. v. Birmingham, 86 F. Supp. 201, 213 (N.D. Iowa 1949).

Although taxpayers are permitted to carry back net operating losses from one year to offset profits of earlier years, Santel does not have a valid net operating loss because no statute exists that authorizes a deduction in

2000 for patronage-sourced income earned in 1998 and allocated to members in 2001. Absent such a statutory-derived deduction, the deductions for 2000 do not exceed gross income, and Santel does not have a valid net operating loss.

### 2. Right to Exclude Patronage-Sourced Dividends

Santel contends that the dividends derived from patronage-sourced income realized in 1998, which Santel was obligated to pay to members in 1998 and ultimately paid to members in 2001, may be **excluded** from Santel's 2000 gross income.

Patronage dividend distributions made to members of a nonexempt cooperative are excludable from the gross income of the cooperative if three conditions are satisfied: (1) the cooperative paid or allocated the patronage dividend to its members in proportion to the amount of business they did with the cooperative ("allocation requirement"); (2) the cooperative was obligated to pay or allocate the patronage dividend to its members at the time it earned the income ("obligation requirement"); and (3) the dividends derived from patronage-sourced income ("source requirement"). See [Pomeroy Coop. Grain Co. v. Commissioner, 288 F.2d 326, 328 (8th Cir. 1961)]; [Farmers Coop. Co. v. Commissioner, 288 F.2d 315, 317, 323-24 (8th Cir. 1961)]. As explained previously, the taxation of nonexempt cooperatives engaged in providing telephone services to persons in rural areas are excluded from the ambit of subchapter T and are instead governed by the

9

law prior to 1962. H.R. Rep. No. 87-1447 (1962); S. Rep. No. 87-1881 (1962). Similar to the exclusion allowed by subchapter T, the exclusion is only permitted in those circumstances where the three requirements are met.

The law prior to 1962 allows the exclusion of patronage dividends by a nonexempt cooperative on the theory that the allocation is a rebate or price adjustment. See Clover Farm Stores Corp. v. Commissioner, 17 T.C. 1265, 1277 (1952); Dr. P. Phillips Coop. v. Commissioner, 17 T.C. 1002, 1010 (1951); Farmers Coop. Co. v. Birmingham, 86 F. Supp. at 213; Valparaiso Grain & Lumber Co. v. Commissioner, 44 B.T.A. 125, 126-27 (1941); see also CF Indus., Inc. v. Commissioner, 995 F.2d 101, 103 (7th Cir. 1993). The issue which the court must address is what taxable year the patronage-sourced income can be excluded from a cooperative's gross income.

Courts' holdings and IRS rulings have not specifically stated that the cooperative taxable year for which the taxpayer is allowed to exclude the patronage-sourced income is in the taxable year when the allocated amount is earned. But the justification for allowing the exclusion of patronage-sourced income and the published revenue rulings that address the tax treatment of allocations to patrons provide guidance for this court.

The justification for allowing a nonexempt cooperative to exclude from its gross income patronage dividends "rests upon the fact that these patronage dividends represent either an additional consideration due the

patron for goods sold through the association or a reduction in the purchase price of supplies or equipment purchased by the patron." Rev. Rul. 54-10, 1954-1 C.B. 24. The profits are constructively returned to members, by reduction of cost or otherwise. Indeed, a district court has stated that one justification for excluding patronage dividends from gross income is that the "patronage dividends are in reality rebates on purchases." Farmers Coop. Co. v. Birmingham, 86 F. Supp. at 213. Because the amount of patronage dividend paid to a member is based on the amount of business that the member does with the cooperative rather than the amount of capital invested, the "[p]atronage dividends are thus effectively price rebates for member-patrons." See I.R.S. Priv. Ltr. Rul. 200314002 (April 4, 2003); see also CF Indus., Inc. v. Commissioner, 995 F.2d 101, 103 (7th Cir. 1993).

Patronage dividends may represent an "additional consideration due the patron for goods sold." Rev. Rul. 54-10, 1954-1 C.B. 24. The exclusion of patronage dividends for federal income tax purposes is justified upon the theory that they may be considered deferred payments on sales. Farmers Coop. Co. v. Birmingham, 86 F. Supp. at 213. Both of these holdings support the conclusion that patronage dividends should be treated as an increase in the cooperative's cost of goods sold. Thus, it would be consistent with this treatment for the allocations to be excluded from the income of the cooperative in the taxable year when the goods are sold to

patrons, that is, when the profit from the business transaction with patron members is earned.

Although Santel argues persuasively that it is authorized to **allocate** the dividend to patrons in years other than the one in which the relevant patronage-income was earned, Santel fails to provide authority or precedent for this court to allow it to **exclude** the amount of patronage dividend in a tax year two years after the year the relevant patronage income was earned. For example, in [Farmers Coop. Co. v. Birmingham, 86 F. Supp. at 237](), the dividend had not been paid, but merely allocated to the member in a credit account in proportion to business transacted. Under this circumstance, the cooperative was considered obligated to pay and had in fact allocated the sourced income so that the cooperative was entitled to exclude it from its gross income in the taxable year when the obligation arose and the members were required to include it on their personal return. [Id.]() But the issue of whether the cooperative was allowed to exclude the patronage-sourced income in a taxable year later than that year when the patronage-sourced income was realized was not addressed.

The court agrees with United States that the appropriate procedure for Santel to follow would have been for Santel to file an amended 1998 corporate income tax return and exclude the dividend from its taxable income in 1998. But Santel failed to file an amended return within the [section 6511(a)]() time limitations. Under 6511(a), the deadline for Santel to

properly file a refund claim for 1998 was May 25, 2002. Admittedly, the deadline had passed when Santel attempted to file an amended 1998 corporate income tax return, but Santel's deadline was not extended due to the refund arising from a net operating loss carryback. Santel has not proven it was authorized to exclude the patronage-source dividend from its gross income in a taxable year two years after when the patronage income was earned. Because the suit for refund was not timely filed, this court has no jurisdiction over this action pursuant to [section 7422(a)](). Thus, it is hereby

ORDERED that defendant's motion to dismiss for lack of jurisdiction (Docket 24) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Docket 27) is denied as moot.

Dated March 12, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE